**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                    :
M.G. et al.,                                        :
                                                    :         Civil Action No.: 06-CV-5099(FLW)
                       Plaintiffs,                  :
                                                    :                    **Opinion**
            v.                                      :
                                                    :
CRISFIELD et al.,                                   :
                                                    :
                       Defendants.                  :
_____           :

**WOLFSON, United States District Judge:**

Presently before the Court are the motions of Warren Township Board of Education (the "Board"), James A. Crisfield, Laura Weitzman, Joseph Palumbo, and Pamela Coley (collectively "Defendants") to dismiss the federal and state law claims brought by M.G. and L.G., individually and on behalf of their child, A.G. (collectively "Plaintiffs") for lack of subject matter jurisdiction. In the alternative, Defendants move to dismiss certain federal claims for failure to state a claim upon which relief can be granted. Specifically, Plaintiffs bring Section 1983 claims against the Defendants for violating their rights to procedural due process, substantive due process, equal protection of the laws and the right to privacy under the Fourteenth Amendment. Plaintiffs also bring, on behalf of A.G., claims against the Board under Section 504 of the Rehabilitation Act. Finally, Plaintiffs bring claims under the New Jersey Constitution and New Jersey statutes and regulations.

For the foregoing reasons, the Court decides the present motions as follows. The Court dismisses without prejudice, Plaintiffs' Section 1983 substantive due process, right to privacy

1

and equal protection claims as well as claims based on unspecified New Jersey laws and regulations. These foregoing claims are dismissed with the right to re-plead as described herein. The Court grants Defendants' motion to dismiss Plaintiffs' Section 504 claim based on Defendants' failure to provide a manifestation determination for lack of subject matter jurisdiction. The Court grants Defendants' motion to dismiss Plaintiffs' claims for punitive damages with respect to the Board. Defendants' motion to dismiss Plaintiffs' Section 1983 procedural due process and Section 504 "regarded as" claims for lack of subject matter jurisdiction is denied. Defendants' motion to dismiss Plaintiffs' Section 504 "regarded as" claim for failure to state a claim is also denied. As to Defendants' motion to dismiss Plaintiffs' claim based on the "thorough and efficient education" clause of the New Jersey Constitution for lack of subject matter jurisdiction, the Court finds that Plaintiffs' opposition brief failed to address the matter, and thus the Court grants Plaintiffs thirty days to address the Court's jurisdiction over this state constitutional claim, or it will be dismissed.

**I. Background and Procedural History**

Plaintiffs' claims arise out of the initial ten day suspension, and subsequent indefinite suspension, of A.G. from the Mt. Horeb School ("Mt. Horeb"), an elementary school operated by Warren Township. A.G. attended a regular third grade class from September 2005 through January 13, 2006, when he was indefinitely suspended. Amended Complaint ("Compl."), ¶13. Because Defendants move (i) to dismiss Plaintiffs' claims for lack of subject matter jurisdiction through a facial attack on the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), and (ii) to dismiss certain claims pursuant to Fed. R. Civ. P. 12(b)(6), the following version of events assumes Plaintiffs' allegations to be true. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)("The facial attack [for lack of subject matter jurisdiction] . . .

2

offer[s] similar safeguards to the plaintiff [as the motion to dismiss for failure to state a claim]: the court must consider the allegations of the complaint as true").

On September 27, 2005, the Mt. Horeb child study team and Plaintiffs met and determined that A.G. was not a "child with a disability" and was not eligible for special education and related services under the Individuals with Disabilities Education Act (IDEA). Compl., ¶14. At some later time, Plaintiffs allege that A.G. was suspended for ten days without receiving any instruction, Id. at ¶ ¶15-16, and that on January 13, 2006, defendant Palumbo, the principal of the Mt. Horeb, suspended A.G. from Mt. Horeb indefinitely. Id. at ¶17. Significantly, Plaintiffs allegedly were not provided with due process rights, i.e., written notification of any charges against A.G. or a hearing before the Board of Education. Id. at ¶ ¶18-20. On January 20, 2006, defendant Weitzman, the Director of Student Personnel Services for Warren Township School District, and Palumbo informed Plaintiffs that A.G. would not be allowed to return to Mt. Horeb. Id. at ¶21. Defendants provided no instruction to A.G. from January 13, 2006 through January 26, 2006, when Defendants began to provide five hours a week of home instruction. Id. at ¶¶39-40.

By indefinitely suspending A.G. from Mt. Horeb, Plaintiffs claim that Defendants tried to "coerce" them into classifying A.G. under the IDEA and accepting special education and related services. Plaintiffs allege that Weitzman and Palumbo told Plaintiffs that "in order for A.G. to receive educational services from Defendant Board, Plaintiffs must consent to classify A.G. under the IDEA in which case, he would be sent to a special education program in another school district." Id. at ¶22. Plaintiffs were told that, if they refused to consent to classify A.G. under the IDEA, he would be placed in Somerset Academy. Id. at ¶23. According to the New Jersey Department of Education's Schools Directory, Somerset Academy is a special elementary

school for handicapped students operated by the Somerset County Educational Services Commission. Id. at ¶26. Further, Palumbo barred A.G. from any school activities unless Plaintiffs consented to classification of A.G. and an out-of-district placement. Id. at ¶25. On February 2, 2006, M.G. met with defendant Crisfield, Superintendent for the Warren Township School District, and informed him of the actions taken by Weitzman and Palumbo. Id. at ¶ ¶29-31. Crisfield allegedly told M.G. "that if he didn't consent to classification of his son, Defendants would send A.G. to Somerset Academy without his parents' consent," Id. at ¶33, and further, threatened to report A.G. as truant if he remained out of school. Id. at ¶34. He allegedly stated, "You really have no choice but to classify A.G." Id. at ¶35. Crisfield refused M.G.'s request to have A.G. placed in another school within the district, stating that it would be against school policy. Id. at ¶¶36-37. When asked about this alleged policy, Warren Township's attorney allegedly stated that there was no such written policy. Id. at ¶38.

On February 14, 2006, Palumbo told Plaintiffs that A.G.'s home instruction would be discontinued as of March 3, 2006, and that A.G. would be placed in Somerset Academy starting on March 6, 2006. Id. at ¶41. This was allegedly "an alternative placement to suspension and further discipline." Id. at ¶42. Defendants' position put the parties at an impasse: Plaintiffs refused to place A.G. in Somerset Academy[1] and Defendants refused to allow A.G. to return to a Warren Township school. Id. at ¶¶43-44. On May 15, 2006, Plaintiffs placed A.G. in a private school. Id. at ¶45.

On June 13, 2006, M.G. explained the situation to Pamela Coley, President of the Warren Township Board of Education, and requested copies of records of board minutes relating to A.G.

---

[1]Although the Amended Complaint does not explicitly say so, the Court assumes that Plaintiffs also refused to consent to classification under the IDEA and an out-of-district placement, which Defendants had previously proposed.

and that disciplinary action be taken against Crisfield, Weitzman and Palumbo. Id. at ¶¶49-51. M.G. was told by Crisfield, Weitzman and Coley that his concerns were being investigated by the Board, however M.G. was never provided with documentation that such an investigation took place. Id. at ¶¶52-53.

Defendants refused to allow A.G. to return to any Warren Township elementary school in the following 2006-2007 school year. Id. at 57. Although Plaintiffs visited several out-of-district placements for A.G. that were suggested by Defendants, Plaintiffs still refused either to consent to classify A.G. under the IDEA or place A.G. at Somerset Academy. Id. at ¶56. On August 27, 2006, M.G. went to an alleged "scheduled meeting" with Crisfield and Weitzman to discuss A.G.'s educational placement in 2006-2007, but they refused to meet with him. Id. at ¶¶58-59.

On August 30, 2006, Crisfield informed Plaintiffs that A.G. must attend Berkeley Heights School District on the following terms: "He would not need to be classified but his parents would have to agree to conditions set by Berkeley Heights School District which include consenting to the use of a behavior plan to be developed by the Berkeley Heights School District and a one-on-one aide." Id. at ¶61. M.G. visited the program and "found that it was the same special education program initially proposed by Defendants," Id. at ¶62, and rejected the placement.

Plaintiffs filed the present lawsuit on October 24, 2006, alleging violations of Plaintiffs' rights under the federal constitution, the New Jersey Constitution and various New Jersey statutes and regulations, as well as A.G's rights under Section 504 of the Rehabilitation Act, 29 U.S.C.A. § 794. Plaintiffs seek the following relief: a declaration that A.G's rights have been violated under the above laws; an injunction requiring the Board to grant A.G. access to the Warren Township schools without requiring Plaintiffs to consent to A.G.'s classification under

the IDEA; the expungement of Defendants' allegedly "unlawful" actions from A.G.'s school records; compensatory and punitive damages; and attorneys' fees. Id. at ¶96.

## II. Claims Insufficiently Plead Under Rule 8(a)(2): Counts Four and Eight

Fed. R. Civ. P. 8(a)(2) provides: "A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." "This rule requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.' That is to say, there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." Phillips v. County of Allegheny, __ F.3d __, Docket No. 06-2869, 2008 WL 305025, *7 (3d Cir. Feb. 5, 2008). Further, "the Supreme Court [has] explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'" Id. at *6 (quoting Bell Atlantic Corp v. Twombly, 127 S. Ct. 1955, 1965 n. 3 (2007)).

A court can dismiss a claim sua sponte if it is insufficiently plead under Rule 8(a)(2). See Hines v. Rimtec Corp., Docket No. 07-966, 2007 WL 2332193, *1 (D.N.J. Aug. 13, 2007) ("However, to the extent that such a claim exists, the Court will dismiss it sua sponte because it is insufficient under Rule 8(a)(2)"); Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) (holding that a "district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action").

Two counts of the Amended Complaint fail to meet this threshold. Count four re-alleges the factual summary provided above, and then asserts that Defendants "violated Plaintiffs' rights to equal protection of the law as guaranteed by the 14th Amendment." Compl., ¶81. While it is not difficult to understand how Plaintiffs' allegations (1) that Plaintiffs were denied procedural

6

protections and (2) that A.G. was indefinitely suspended from Mt. Horeb, and thereby "coerced" into classification and special services under the IDEA, relate to Plaintiffs' claims under the due process clause, it is unclear how these factual allegations relate to a violation of the equal protection clause.[2] Without a specification of which facts provide the grounds for Plaintiffs' equal protection claim, this count fails to make the "showing" required by Rule 8(a)(2), and is not sufficiently distinct from a "bare averment that [Plaintiffs] want[] relief and [are] entitled to it." Phillips, 2008 WL 305025, at *6 (quoting Twombly, 127 S. Ct. 1955 at 1965 n. 3).

Count eight re-alleges the factual summary described herein and then states that the Board's "actions and omissions violated Plaintiffs' rights under New Jersey Statutes and Regulations." Compl., ¶96. This obviously falls short of providing adequate notice to Defendants of which statutes and regulations they have violated and why, and therefore also falls short of the "showing" required by Rule 8(a)(2).

Thus, the Court finds that counts four and eight fail to provide the "showing" required under Rule 8(a)(2), and therefore they are dismissed without prejudice. Plaintiffs may move to amend their Amended Complaint within thirty days to re-plead and further specify the grounds for counts four and eight.

**III. Plaintiffs' Federal Claims**

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' federal claims because Plaintiffs have not exhausted their administrative remedies. However, the validity of Defendants' argument turns on the precise nature of such claims. Because the Court

---

[2]Since Plaintiffs do not distinguish between their Section 1983 substantive due process claim and their Section 1983 right to privacy claim, and Plaintiffs do not assert a ground for the right to privacy independent of the due process clause, the Court will treat these two claims as a single claim based on the substantive due process clause.

finds that consideration of Defendants' motion to dismiss Plaintiffs' Section 1983 substantive

due process claim will force Plaintiffs to clarify the claim, and thereby facilitate the Court's

ability to ascertain whether or not the Court has subject matter jurisdiction over the claim, I find

it appropriate to consider Defendants' motion to dismiss Plaintiffs' substantive due process

claim at the outset.

**A. Motion to Dismiss Plaintiffs' Substantive Due Process Claim**

**1. Standard of Review**

Defendants argue that Plaintiffs' Section 1983 substantive due process claim should be

dismissed for failure to state claim pursuant to Fed. R. Civ. P. 12(b)(6). When considering a

motion to dismiss on the pleadings, a Court must take all allegations in the complaint as true,

viewed in the light most favorable to Plaintiffs. See Gomez v. Toledo, 446 U.S. 635, 636 n. 3

(1980); Robb v. City of Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984).

Recently, in Twombly, the Supreme Court clarified the Rule 12(b)(6) standard.

Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41

(1957), that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would

entitle him to relief." Twombly, 127 S. Ct. at 1968 (citing Conley, 355 U.S. at 45-46). Instead,

the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief

above the speculative level." Id. at 1965. Thus, "[w]hile a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Id.  at 1964-65 (citations

omitted). "After Twombly, it is no longer sufficient to allege mere elements of a cause of action;

instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" <u>Phillips</u>, 2008 WL 305025 at *5 (citing <u>Twombly</u>, 127 S. Ct. at 1969 n. 8). The "Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a possibility requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Id.</u> at *6 (citing <u>Twombly</u>, 127 S. Ct. at 1965).

**2. Substantive Due Process**

Plaintiffs allege that Defendants attempted to "coerce" A.G. into classification and the receipt of special education services under the IDEA by demanding that Plaintiffs choose between classification under the IDEA and placement in Somerset Academy or Berkeley Heights. Plaintiffs cast this "coercion" as a Section 1983 substantive due process claim. Essentially, Plaintiffs claim that by indefinitely suspending A.G. from Mt. Horeb, Defendants attempted to "coerce" Plaintiffs into classifying A.G. under the IDEA, and thereby interfered with M.G. and L.G.'s constitutional liberty interest in making important decisions about A.G.'s education.

This "coercion" argument relies on an implicit premise: that Defendants were obligated to continue to provide general education services to A.G. at Mt. Horeb or some other Warren Township elementary school, rather than an alternative education program at Somerset Academy or in Berkeley Heights. If Defendants were not so obligated, i.e., there was a legitimate reason to indefinitely suspend A.G., <u>see</u> <u>N.J.S.A.</u> 18A: 37-2 ("Causes for suspension or expulsion of pupils"), then Defendants were merely following state regulations by providing A.G. with an alternative educational placement pursuant to <u>N.J.A.C.</u> 6A:16-9 <u>et</u> <u>seq.</u>, and any "coercion"

9

would be illusory. See N.J.A.C. 6A:16-7.3(a) ("In each instance of long-term suspension, the district board of education shall . . . provid[e] the following: . . . 9. Educational services . . . which may include a public education program provided in accordance with the provisions of N.J.A.C. 6A:16-9"). To put things another way, the alleged "coercion" at issue in this case is Defendants' alleged unlawful deprivation of general education services within Warren Township, and the use of that deprivation to pressure Plaintiffs into classifying A.G. under the IDEA. It follows that, if there was no wrongful deprivation of educational services within Warren Township, then there was no "coercion." The essence of Plaintiffs' substantive due process claim, then, is that Defendants lacked a legal basis to indefinitely suspend A.G. and deprive him of educational services within the Township. Conversely, if there was an adequate legal basis for A.G.'s indefinite suspension, then the Township was within its rights to propose an alternative education program pursuant to N.J.A.C. 6A: 16-9, et seq.

Defendants argue that Plaintiffs' Section 1983 substantive due process claim fails as a matter of law because Plaintiffs have not set forth a fundamental right that has been violated by Defendants. Defendants are correct that there is no fundamental right to education protected under the federal constitution: "We have carefully considered each of the arguments supportive of the District Court's finding that education is a fundamental right or liberty and have found those arguments unpersuasive." San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 37 (1973);[3] see also Bowers v. National Collegiate Athletic Ass'n, 475 F.3d 524, 553 (3d Cir. 2007)("[T]he Supreme Court has held that there is no fundamental right to public

---

[3] Rodriguez dealt with a challenge to a disparity in funding between different public schools. It did not address whatever "merit appellees' argument might have if a State's financing system occasioned an absolute denial of educational opportunities to any of its children, [instead] . . . finding . . . [no] interference with fundamental rights where only relative differences in spending levels are involved." Rodriguez, 411 U.S. at 37.

education")(citing <u>Rodriguez</u>, 411 U.S. at 35).  But that does not end the matter.

Plaintiffs respond that the due process clause of the Fourteenth Amendment protects a

right to parental independence in making educational decisions regarding children:

> "In a long line of cases, we have held that, in addition to the
> specific freedoms protected by the Bill of Rights, the 'liberty'
> specially protected by the Due Process Clause includes the rights
> to marry, <u>Loving v. Virginia</u>, 388 U.S. 1 (1967); to have children,
> <u>Skinner v. Oklahoma ex rel. Williamson</u>, 316 U.S. 535 (1942); <u>to
> direct the education and upbringing of one's children</u>, <u>Meyer v.
> Nebraska</u>, 262 U.S. 390 (1923); <u>Pierce v. Society of Sisters</u>, 268
> U.S. 510 (1925)."

<u>Washington v. Glucksberg</u>, 521 U.S. 702, 720 (1997) (emphasis added).

More specifically, Plaintiffs contend that Plaintiffs' constitutional right "to direct the education

and upbringing of one's children" was violated by Defendants' attempt to "coerce" Plaintiffs

into classifying A.G. under the IDEA. As explained above, this argument turns on the legality of

A.G.'s indefinite suspension from Mt. Horeb.

Even though there is no fundamental right to education under the federal constitution,

that does not mean the due process clause of the Fourteenth Amendment has nothing to say

about a public school administrator's decision to indefinitely suspend a student from a public

school. "State law determines what constitutes 'property' for due process purposes," <u>Seal v.

Morgan</u>, 229 F.3d 567, 574 (6th Cir. 2000), and New Jersey law clearly provides A.G. the right

to a free public education. <u>See</u> <u>N.J.S.A.</u> 18A: 38-1 ("Public schools shall be free to the following

persons over five and under 20 years of age: . . . a. Any person who is domiciled within the

school district"). Thus, government infringement on that interest is subject to rational basis

review under the due process clause. "Government actions that do not affect fundamental rights

or liberty interests and do not involve suspect classifications will be upheld if [] they are

rationally related to a legitimate state interest." Seal, 229 F.3d at 575 (citing Vacco v. Quill, 521 U.S. 793, (1997)(applying the rational basis standard of review to uphold New York's statutes outlawing assisted suicide, which neither infringe fundamental rights nor involve suspect classifications)).

"Courts are reluctant to become embroiled in the wisdom of and the manner in which educational institutions apply their policies. Rather, courts examining substantive due process violations in this context have only considered whether the punishment imposed is rationally related to a legitimate purpose." Marsh v. Delaware State University, Docket No. 05-0087, 2006 WL 141680, *5 (D. Del. Jan. 19, 2006) (citations omitted); Brian A. v. Stroudsburg Area School Dist., 141 F. Supp. 2d 502, 510 (M.D. Pa. 2001) ("In the context of school discipline a substantive due process claim will succeed only in the 'rare case' when there is 'no rational relationship between the punishment and the offense'") (quoting Seal, 229 F.3d at 575). A.G.'s indefinite suspension was a form of discipline imposed on A.G. Indeed, Plaintiffs allege that they were informed by Palumbo that A.G.'s placement at Somerset Academy was "an alternative placement to suspension and further discipline." Compl., ¶42. Thus, Plaintiffs' substantive due process claim turns on the relation between A.G.'s misbehavior, if any, and the punishment of indefinite suspension from Mt. Horeb. [4]

---

[4]The Court notes that Plaintiffs' "coercion" argument could be interpreted differently: perhaps the "coercion" to classify A.G. under the IDEA flows not from A.G.'s indefinite suspension from Mt. Horeb and other in-district schools, but from the inadequacy of the alternative placements of Somerset Academy and the Berkeley Heights School District. However, without a more explicit pleading from the Plaintiffs, the Court will not consider this interpretation for two reasons. First, this reading of the Amended Complaint is inconsistent with the relief Plaintiffs seek: access to the schools within the Warren Township, rather than a different alternative placement. Second, recasting Plaintiffs' claim in this way renders it a state law challenge to the appropriateness of A.G.'s alternative placement under N.J.A.C. 6A: 16-9., et seq, which Plaintiffs have not alleged.

Plaintiffs' Amended Complaint carefully alleges that Plaintiffs were not given "written notification of any charges," Compl., ¶18 (emphasis added) or a hearing regarding A.G's indefinite suspension from Mt. Horeb, and that Defendants failed to provide any "legal authority" for their actions. Id. at ¶27. But Plaintiffs do not explicitly allege that Defendants lacked any legitimate reason, i.e., the rational basis required to withstand a substantive due process challenge, for indefinitely suspending A.G. Defendants argue that A.G.'s "inappropriate behaviors continued and remained dangerous," Defendants' Brief, 9, but Plaintiffs do not address or dispute this assertion, or indeed, make any allegation regarding A.G.'s behavior and whether his suspension for such behavior was related to a legitimate purpose. Based on Plaintiffs' allegations, it does not "appear[] beyond doubt that [Plaintiffs] can prove no set of facts in support of [their] claim," Conley, 355 U.S. at 45-46, i.e., there might be no rational basis on which to indefinitely suspend A.G. from Mt. Horeb. But the "no set of facts" interpretation of the Rule 12(b)(6) standard has been "retired" by Twombly. Based on Plaintiffs' own allegations, the Court is required to speculate whether A.G's behavior provided a rational basis for his indefinite suspension, and hence whether Plaintiffs have a right to relief. Moreover, Plaintiffs do not allege that they were given no reasons for A.G.'s indefinite suspension, but rather that they were not given any written notification of such reasons. Absent an allegation by Plaintiffs that Defendants' acted arbitrarily or without a rational basis in imposing an indefinite suspension for A.G.'s alleged offending behavior (Plaintiffs avoid any characterization of what alleged behavior caused A.G.'s expulsion or what A.G.'s actual behavior was), Plaintiffs allegations are not "enough to raise a right to relief [for a substantive due process violation] above the speculative level." Twombly, 127 S.Ct. at 1965.

Thus, Plaintiffs' substantive due process claim is dismissed without prejudice. Plaintiffs

13

may move to amend their Amended Complaint within thirty days to re-plead and further specify the grounds for counts two and three.

**B. Subject Matter Jurisdiction Over Plaintiffs' Federal Claims**

Defendants contend that the Court lacks subject matter jurisdiction to consider all of Plaintiffs' federal claims because Plaintiffs have failed to exhaust administrative remedies. Given the above holding, the Court need only address Plaintiffs' Section 1983 procedural due process claim and Section 504 claims.

Defendants provide three main reasons why Plaintiffs should be required to exhaust administrative remedies.

**1. New Jersey State Law**

First, Defendants argue that New Jersey statutes and supporting case law require that Plaintiffs' claims be brought in the first instance before the New Jersey Commissioner of Education. Plaintiffs Opposition Brief, 4-8. However, federal law controls this Court's jurisdiction over Plaintiffs' <u>federal</u> claims, not the state law cited by Defendants. Moreover, federal law provides no exhaustion requirements for Section 1983 and Section 504 claims. <u>See Jeremy H. v. Mount Lebanon School Dist.</u>, 95 F.3d 272, 282 n.17 (3d Cir. 1996) ("Section 504 . . . incorporates by reference the remedies, procedures and rights of Title VI of the Civil Rights Act of 1964, and therefore is not ordinarily subject to an exhaustion requirement"); <u>Freed v. Consolidated Rail Corp.</u>, 201 F.3d 188, 194 (3d Cir. 2000)("Accordingly, we reaffirm our long-standing position that section 504 plaintiffs may proceed directly to court without pursuing administrative remedies"); <u>Hochman v. Board of Ed. of City of Newark</u>, 534 F.2d 1094, 1096 (3d Cir. 1976) ("When federal claims are premised on [42 U.S.C. § 1983] . . . we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role

14

Congress has assigned to the federal courts to protect constitutional rights") (citations omitted).

**2. Primary Jurisdiction**

Second, Defendants argue that the Court should defer jurisdiction to the New Jersey Commissioner of Education pursuant to the doctrine of primary jurisdiction. The Supreme Court has explained that doctrine as follows:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

United States v. Western Pacific Railroad Co., 352 U.S. 59, 63-64 (1956).

The doctrine of primary jurisdiction does not mandate that this Court transfer jurisdiction of Plaintiffs' federal claims to the New Jersey Commissioner of Education because those claims do not involve the "resolution of issues which, under a regulatory scheme, have been placed within the special competence of" the New Jersey Department of Education. Western Pacific Railroad Co., 352 U.S. at 64. "The Commissioner of Education enjoys broad authority under N.J.S.A. 18A:6-9 to hear 'all controversies and disputes arising under the school laws.'" Hornstine v. Township of Moorestown, 263 F.Supp. 2d 887, 899 (D.N.J. 2003) (citations omitted). Like the case at bar, Hornstine involved claims of procedural and substantive due process, as well as discrimination claims under Section 504. Id. This Court concluded: "[b]oth the plain language of N.J.S.A. 18A:6-9 and New Jersey case law compel the conclusion that the Commissioner does not have jurisdiction over plaintiff's myriad claims. Because none of

15

plaintiff's claims 'arise under the school laws' of New Jersey, it follows that N.J.S.A. 18A:6-9 does not grant the Commissioner authority to adjudicate the types of claims raised here." Id. at 899-900. Analogously, because Plaintiffs' federal claims do not "arise under the school laws" of New Jersey, the Commissioner of Education lacks jurisdiction to hear them. It follows, a fortiori, that Plaintiffs' federal claims have not "been placed within the special competence of" the New Jersey Department of Education. Thus, Defendants' reliance on the doctrine of primary jurisdiction, at least as applied to Plaintiffs' federal claims, is misplaced.

**3. The IDEA Exhaustion Requirement**

Third, Defendants contend that Plaintiffs' claims are IDEA claims cloaked as Section 1983 constitutional claims and Section 504 claims. To the extent that Plaintiffs' claims seek the same relief that would be available under the IDEA, Plaintiffs' claims are subject to the IDEA's exhaustion requirements. See Hornstine, 263 F.Supp. 2d at 900 ("[I]n cases in which it appears that a plaintiff has cloaked an IDEA claim as an ADA, Rehabilitation Act, or Section 1983 action in an effort to avoid application of the IDEA's distinct exhaustion requirement, courts will require that plaintiff to exhaust the state administrative remedies mandated for IDEA claims"); Herring v. Chichester School Dist., Docket No. 06-5525, 2007 WL 3287400, *3 n. 5 (E.D. Pa. Nov. 6, 2007) ("Presumably, the District relies on the statutory requirement that a plaintiff seeking relief under § 504 that is also available under IDEA must first exhaust her administrative remedies" (citing 20 U.S.C. § 1415(l)); Richter ex rel. Tate v. School Dist. of City of Erie, Docket No. 01-152, 2002 WL 655674, *4 (W.D. Pa. Mar. 25, 2002)("Thus, a plaintiff may not circumvent IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and 'repackaging them as claims under some other statute - e.g., Section 1983, Section 504 of the Rehabilitation Act, or the ADA'") (citations omitted).

16

The IDEA provides in pertinent part:

(l) Rule of construction
Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws <u>seeking relief that is also available under this subchapter</u>, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. §1415(l) (emphasis added).

Plaintiffs argue that their federal claims are not subject to the exhaustion requirement of Section 1415(l) for two reasons. First, Plaintiffs argue they are not "seeking relief that is also available under" the IDEA. Second, Plaintiffs argue that even if their claims were subject to the IDEA exhaustion requirement, recourse to the administrative proceedings under the IDEA would be futile. <u>See</u> <u>W.B. v. Matula</u>, 67 F.3d 484, 495 (3d Cir. 1995) (citations omitted), abrogated on other grounds by <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791 (3d Cir. 2007)("Where recourse to IDEA administrative proceedings would be futile or inadequate . . . the exhaustion requirement is excused").

"The primary purpose of the IDEA, as stated by Congress, is to 'ensure that all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their needs.'" <u>Durkee v. Livonia Cent. School Dist.</u>, 487 F.Supp. 2d 313, 318 (W.D.N.Y. 2007) (quoting 20 U.S.C.A. § 1400(d)(1)(A)). The IDEA establishes procedures "to ensure that <u>children with disabilities</u> and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C.A. § 1415(a) (emphasis added). IDEA administrative

17

procedures allow "any party to present a complaint . . . with respect to any matter relating to the

identification, evaluation, or educational placement of the child, or the provision of a free

appropriate public education to such child." 20 U.S.C.A. § 1415(b)(6). The word "child" in

Section 1415(b) refers to "children with disabilities" in Section 1415(a), a term the IDEA defines

as children "who . . . need[] special education and related services." 20 U.S.C.A. §

1401(3)(A)(ii).

> As the Third Circuit has recently summarized:
>
> Under the IDEA, any aggrieved party may "present a complaint ... with respect to
> any matter relating to the identification, evaluation, or educational placement of
> the child, or the provision of a free appropriate public education to such child." 20
> U.S.C. § 1415(b)(6). The party may elect to have the complaint investigated by
> the state educational agency, see 34 C.F.R. § 300.661, or avail itself of an
> "impartial due process hearing," 20 U.S.C. § 1415(f). Any party aggrieved by the
> outcome of the due process hearing "shall have the right to bring a civil action
> with respect to the complaint presented ... in a district court of the United States,
> without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). This
> action must be initiated within 90 days from the date of the hearing officer's
> decision. § 1415(i)(2)(B). The district court is authorized to grant "such relief as
> the court determines is appropriate," including attorneys' fees, reimbursement for
> a private educational placement, and compensatory education. See 20 U.S.C. §
> 1415(i)(3)(B)(i) (attorneys' fees); Burlington Sch. Comm. v. Dep't of Educ., 471
> U.S. 359, 470 (1985) (reimbursement); Lester H. v. Gilhool, 916 F.2d 865, 873
> (3d Cir. 1990) (compensatory education).

A.W., 486 F.3d at 802.

"In order to ascertain whether [Plaintiff] was required to exhaust administrative remedies

before bringing suit, [the Court] must determine whether this action - which includes claims

under . . . the Rehabilitation Act - seeks 'relief that is also available under [the IDEA].'" Polera

v. Board of Educ. of Newburgh Enlarged City School Dist., 288 F.3d 478, 483 (2d Cir. 2002)

(quoting 20 U.S.C.A. § 1415( l)). In interpreting an earlier version of Section1415(l), the

Seventh Circuit has stated:

18

> The statute speaks of available relief, and what relief is "available" does not
> necessarily depend on what the aggrieved party wants. Certainly not in litigation.
> "Except as to a party against whom a judgment is entered by default, every final
> judgment shall grant the relief to which the party in whose favor it is rendered is
> entitled, even if the party has not demanded such relief in the party's pleadings."
> Fed.R.Civ.P. 54(c). The nature of the claim and the governing law determine the
> relief no matter what the plaintiff demands. If this principle is equally applicable
> for purposes of [§ 1415(l)], then the theory behind the grievance may activate the
> IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not
> supply . . .
> We read "relief available" to mean relief for the events, condition, or
> consequences of which the person complains, not necessarily relief of the kind the
> person prefers.

Charlie F. by Neil F. v. Board of Educ. of Skokie School Dist. 68, 98 F.3d 989, 991-92 (7th Cir.

1996) (emphasis added).

The question, then, is whether the "events, condition, or consequences" of which

Plaintiffs complain, i.e., the nature of Plaintiffs' claims and the alleged harms at issue in this

case, can be addressed by the IDEA administrative process. To the extent that Plaintiffs' claims

relate to the "special education and related services" guaranteed by the IDEA, and Plaintiffs'

injuries can be remedied through the IDEA administrative process, such claims are subject to the

IDEA exhaustion requirement. See 20 U.S.C.A. § 1400(d)(1)(A) ("The purposes of this chapter

are . . . to ensure that all children with disabilities have available to them a free appropriate

public education that emphasizes special education and related services designed to meet their

unique needs and prepare them for further education, employment, and independent living").

 This determination requires a separate examination of each of Plaintiffs' remaining federal

claims.

**a. The Effect of Plaintiffs' Waiver of Services Under the IDEA**

Before turning to Plaintiffs' remaining federal claims, the Court notes that Plaintiffs are

not entitled to IDEA relief to the extent that they have refused the provision of special education

and related services to A.G under the IDEA before bringing their claims. With respect to

parental consent, the IDEA provides:

> (D) Parent consent . . .
>> (ii) Absence of consent . . .
>>> (II) For services
>>> If the parent of such child refuses to consent to services under
>>> clause (i)(II), the local educational agency shall not provide special
>>> education and related services to the child by utilizing the
>>> procedures described in Section 1415 of this title.
>>> (III) Effect on agency obligations
>>> If the parent of such child refuses to consent to the receipt of
>>> special education and related services, or the parent fails to
>>> respond to a request to provide such consent--
>>>> (aa) the local educational agency shall not be considered to
>>>> be in violation of the requirement to make available a free
>>>> appropriate public education to the child for the failure to
>>>> provide such child with the special education and related
>>>> services for which the local educational agency requests
>>>> such consent; and
>>>> (bb) the local educational agency shall not be required to
>>>> convene an IEP meeting or develop an IEP under this
>>>> Section for the child for the special education and related
>>>> services for which the local educational agency requests
>>>> such consent.

20 U.S.C.A. § 1414 (a)(1)(D).

Plaintiffs allege that around January 20, 2006, they were told that A.G. would not be

permitted to return to Mt. Horeb. They were then given two options: (1) consent to classification

under the IDEA and an out-of-district placement or (2) A.G. would be placed in Somerset

Academy, allegedly an elementary school for handicapped children, or in the Berkeley Heights

School District, with what Plaintiffs allege to be the equivalent of IDEA services. Plaintiffs

refused both options. Because Defendants offered special education and related services to

Plaintiffs through the IDEA, the express terms of Section 1414(a)(1)(D)(ii)(III)(aa) insulate the

Board from liability for "violation of the requirement to make available a free appropriate public

education to [A.G.] for the failure to provide [A.G.] with the special education and related

services" offered. 20 U.S.C.A. § 1414(a)(1)(D)(ii)(III)(aa).

However, in the context of "Placement in an alternative educational setting," 20 U.S.C.A.

§ 1415 (k), the IDEA does provide protection for students who have not been classified as

disabled. 20 U.S.C.A. 1415 (k)(5) (A) provides that "a child who has not been determined to be

eligible for special education and related services under this subchapter and who has engaged in

behavior that violates a code of student conduct, may assert any of the protections provided for

in this subchapter if the local educational agency had knowledge (as determined in accordance

with this paragraph) that the child was a child with a disability before the behavior that

precipitated the disciplinary action occurred." 20 U.S.C.A. 1415 (k)(5)(A).  20 U.S.C.A. § 1415

(k)(5)(C) indicates that Defendants lack the requisite knowledge for liability: a "local

educational agency shall not be deemed to have knowledge that the child is a child with a

disability if the parent of the child . . . has refused services under this subchapter or the child has

been evaluated and it was determined that the child was not a child with a disability under this

subchapter." 20 U.S.C.A. § 1415 (k)(5)(C). Thus, the fact that Plaintiffs have refused

classification and services under the IDEA bars them from invoking Section 20 U.S.C.A. § 1415

(k) as a basis for Defendants' liability under the IDEA.

Nonetheless, the mere fact that Plaintiffs have refused to consent to A.G.'s classification

under the IDEA, with the consequence that the Board is not liable under the IDEA for failure to

provide special education and related services in the past, does not by itself mean that the

IDEA's exhaustion requirement is inapplicable to the case at bar. Plaintiffs are still subject to

IDEA exhaustion requirements if they could receive "relief that is . . . available" through the

IDEA administrative process. 20 U.S.C.A. § 1415(l). Were it otherwise, any plaintiff could

21

circumvent the IDEA administrative process by refusing to accept services under the IDEA, thereby insulating a local education agency from liability, and then bringing suit under another federal statute for the same relief that could be obtained through the IDEA. Instead, a plaintiff who refuses services under the IDEA, and then brings a Section 504 discrimination claim based on the denial of services that could be obtained through the IDEA administrative process, would be barred from proceeding with the Section 504 claim. Thus, the mere fact that Plaintiffs have refused services under the IDEA is not an end run around the IDEA's exhaustion requirements.

**b. Plaintiffs' Section 1983 Procedural Due Process and Section 504 "Regarded As" Claims**

Turning to Plaintiffs' individual federal claims, Plaintiffs' Amended Complaint alleges that Defendants suspended A.G. from Mt. Horeb, first for ten days, and then indefinitely, without providing Plaintiffs' written notification of the charges against A.G. or affording them any other due process rights. Further, Plaintiffs allege that A.G. was never given a hearing before the Board of Education regarding his suspension. Plaintiffs allegedly made requests for the legal authority for Defendants' actions, as well records of Board of Education minutes regarding A.G., but were given no response.

It is well established that students who are suspended from public school for ten days or less are entitled to minimum procedural due process rights: "[D]ue process requires . . . that the student be given <u>oral or written</u> notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." <u>Goss v. Lopez</u>, 419 U.S. 565, 581 (1975) (emphasis added). The Supreme Court has stated that a heightened standard applies to lengthier suspensions or expulsions, which would apply to the case at bar: "Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." <u>Id.</u> at 584. Plaintiffs contend that A.G.

22

was indefinitely suspended without these minimum protections. As a result, they seek equitable

relief restoring A.G.'s right to attend a school within Warren Township and damages flowing

from the alleged procedural violations.

Plaintiffs also claim that A.G. was "regarded as" having a disability by Defendants and,

for that reason, barred from attending an in-district, general education school in violation of

Section 504.

The Third Circuit has recently outlined the basis of a Section 504 disability claim:

The Rehabilitation Act adopts the scheme of "remedies, procedures, and rights set
forth in Title VI of the Civil Rights Act of 1964," 42 U.S.C. § 2000d et seq., to
remedy alleged violations of Section 504 by recipients of federal funding. 29
U.S.C. § 794a(a)(2). Title VI provides for federal funding to be terminated if an entity
receiving assistance fails to comply with its requirements. 42 U.S.C. §
2000d-1. Title VI does not, however, contain an express private right of action.
Rather, the Supreme Court has found an implied right of action under the statute
and Congress has acknowledged this right in amendments to the statute, "leaving
it 'beyond dispute that private individuals may sue to enforce' Title VI." Barnes
v. Gorman, 536 U.S. 181, 185 (2002) (quoting Alexander v. Sandoval, 532 U.S.
275, 280 (2001)). "Thus Congress, in essence, provided a private right of action
under Section 504 by incorporating Title VI's 'remedies, procedures, and rights'
into the statute." Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh,
382 F.3d 412, 425-26 (3d Cir. 2004).
The remedies for violation of Section 504 "are coextensive with the remedies
available in a private cause of action brought under Title VI of the Civil Rights
Act of 1964." Gorman, 536 U.S. at 185. These remedies include compensatory
damages, injunctive relief, and other forms of relief traditionally available in suits
for breach of contract. See id. at 187. Punitive damages are not available. Id. Suits
may be brought pursuant to Section 504 against recipients of federal financial
assistance, but not against individuals. Emerson v. Thiel Coll., 296 F.3d 184, 190
(3d Cir. 2002).

A.W., 486 F.3d at 803-04.

In a Section 504 claim of disability discrimination in the educational context, the plaintiff

must show that:

(1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified" to
participate in school activities; (3) the school or the board of education receives

23

federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995) (quoting Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1380 (3d Cir. 1991)). In addition, the plaintiff must demonstrate that defendants know or should be reasonably expected to know of his disability. But a plaintiff need not prove that defendants' discrimination was intentional. We have held that there are few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition and have noted that the regulations implementing § 504 require that school districts "provide a free appropriate education to each qualified handicapped person in [its] jurisdiction."

Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1999) (citations

omitted); see also Indiana Area School Dist. v. H.H., 428 F.Supp. 2d 361, 363 (W.D. Pa. 2006).

Importantly for the case at bar, an "individual with a disability" includes "any person who . . . is

regarded as having . . . an impairment." 29 U.S.C.A. § 705(20)(B)(iii); see also Marshall v.

Sisters of Holy Family of Nazareth, 399 F.Supp. 2d 597, 603 (E.D. Pa. 2005).

　　In the context of this case, Plaintiffs' procedural due process and Section 504 "regarded

as" claims do not seek "relief that is . . . available" through the IDEA administrative process. 20

U.S.C.A. § 1415(l). First and foremost, Plaintiffs do not allege that A.G. is disabled. To the

contrary, they assert that Defendants previously evaluated A.G. and determined that he was not

eligible for services pursuant to the IDEA. Moreover, Plaintiffs have persistently refused the

Defendants' requests to classify A.G. for special services under the IDEA, and they have the

right to do so. 20 U.S.C.A. § 1414 (a)(1)(D). Because Plaintiffs refuse classification and do not

seek any services under the IDEA, Plaintiffs cannot get relief through the administrative

procedures of the IDEA which involve classification and/or receipt of special services.

　　This is not a scenario where a plaintiff cloaks a demand for IDEA relief as Section 1983

and Section 504 claims to avoid exhaustion requirements. With respect to Plaintiffs' procedural

due process claim, the "events, condition, or consequences" of which Plaintiffs complain are the

denial of the minimal procedural due process to which <u>any general education student</u> is entitled. The procedural violations that Plaintiffs attack are not violations of specific IDEA procedures and have nothing to do with the provision of special education and related services to disabled children. Thus, Plaintiffs cannot get relief for the denial of such procedures through the IDEA administrative process which is designed "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C.A. § 1415(a).

With respect to A.G.'s Section 504 "regarded as" claim, the "events, condition, or consequences" of which Plaintiffs complain are A.G.'s indefinite suspension from Mt. Horeb because of a perceived disability. Like Plaintiffs' procedural due process claim, A.G's Section 504 "regarded as" claim could be brought by <u>any general educational student</u> who, like A.G., claims do have been discriminated against because of a perceived disability. Because the discrimination at issue in this Section 504 claim has nothing to do with Defendants' failure to provide special services or accommodations, it does not fall within the ambit of the IDEA administrative process. <u>See</u> Plaintiffs' Opposition Brief, 13 ("Plaintiffs are not asking for special education or related services under Section 504"). The IDEA does not provide the relief that Plaintiffs' Section 504 claim seeks, i.e., access to Warren Township schools <u>without</u> classification and/or special educational services.

Moreover, no special administrative expertise is required to evaluate Plaintiffs' procedural due process and Section 504 claims because they are unrelated to the needs of a disabled student. In fact, they proceed on the premise that A.G. is appropriately treated as a regular education student. This Court, not an IDEA administrative hearing, is the forum with the expertise necessary to determine whether (i) Defendants provided Plaintiffs with constitutionally

insufficient due process and (ii) whether A.G. was discriminated against because of a perceived disability. Finally, this analysis is supported by <u>Doe v. Board of Educ.</u>, 149 F.3d 1182 (6th Cir. 1998), where the Sixth Circuit found that a plaintiff had failed to exhaust his administrative remedies under the IDEA, but still considered his procedural due process claims under <u>Goss</u>.

  The fact that Defendants may have offered A.G. special education and related services though the IDEA, which Plaintiffs refused, cannot mean that A.G. is barred from asserting the same constitutional and Section 504 claims that any general education student could bring without any exhaustion requirements. If the Court were to require Plaintiffs to exhaust these claims under the IDEA merely because Defendants offered special education services to A.G., any Board of Education could impose an exhaustion requirement on Section 1983 procedural due process or Section 504 claims simply by offering special education services after a suspension or expulsion is challenged. This would be an odd consequence of the IDEA's exhaustion requirement. Thus, the exhaustion requirement of Section 1415(l) does not apply to Plaintiffs' procedural due process and Section 504 "regarded as" claims.

  The cases relied on by Defendants do not hold otherwise. Defendants cite a string of cases for the proposition that "[f]ederal courts have consistently invoked [the IDEA exhaustion requirement] to bar suits based upon claims that a school district failed to provide appropriate educational services to a disabled student." Defendants' Brief, 11. These cases all involve claims on behalf of <u>disabled students</u> challenging the adequacy of the provision of special education and related services to which they are entitled under the IDEA, or demanding damages for harms that could be addressed under the IDEA. <u>See</u> <u>Bernardsville Bd. of Educ. v. J.H.</u>, 42 F.3d 149, 156 (3d Cir. 1994) ("The record bespeaks an appalling failure on the part of the education bureaucracy to develop and implement an appropriate IEP," and thus the court turned its "attention directly to

the question of the timeliness of J.H.'s parents' request for reimbursement" for his placement at a private school); <u>Jeremy H.</u>, 95 F.3d at 274 ("The plaintiffs before us in this case - Jeremy Hunter, who has a severe visual handicap, [and his parents] - assert that the Mount Lebanon School District and its staff have, over the course of many years, failed to provide the 'appropriate' educational program to which Jeremy Hunter has been entitled [, and] as required by IDEA, the Hunters initially invoked a Pennsylvania administrative procedure established to resolve such claims"); <u>Polera</u>, 288 F.3d at 480, 488 ("Polera alleges that the Board . . . failed to provide her with the free appropriate public education, including study materials, compensation for tutoring, and recognition of academic achievements, to which she was entitled as a disabled student . . . [and the court held that where] a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages"); <u>Charlie F.</u>, 98 F.3d at 990-92 ("Charlie has an 'individual educational plan' under the auspices of the Individuals with Disabilities Education Act . . .[and brought suit for damages [p]resumably at least in part to pay for services (such as counseling) that will assist his recovery of self-esteem and promote his progress in school . . . [and the] school district may be able (indeed, may be obliged) to provide these services in kind under the IDEA"); <u>Lindsley ex rel. Kolodziejczack v. Girard School Dist</u>, 213 F.Supp. 2d 523, 535 (W.D. Pa. 2002)("The basis of Plaintiff's claim is presumably that the Defendant failed to identify her as a disabled child and provide appropriate services, and notwithstanding that she seeks only damages via § 1983 as opposed to injunctive relief, the highly factual nature of the appropriateness of Plaintiff's education is within the peculiar expertise of the administrative body"); <u>see</u> <u>also</u> <u>M.M. v. Tredyffrine/Easttown School District</u>, Docket no. 06-1966, 2006 U.S. Dist. LEXIS 62918, *19, 23 (E.D. Pa. Sep. 1, 2006)("the Court assumes that Plaintiffs challenge

27

[the District's determination that M. does not qualify as a student with a disability entitled to special education under the IDEA] . . . [and holds that] Plaintiffs' Section 504 claim requires exhaustion because the IDEA administrative process offers potential relief"). Plaintiffs' Section 1983 procedural due process and Section 504 "regarded as" claims are distinguishable from these cases because Plaintiffs do not claim that A.G. is disabled nor do they seek relief that is available under the IDEA.

Defendants also cite T.W. v. North Plainfield Board of Education, Docket No. 2004 8559, 2005 N.J. AGEN LEXIS 3 (Jan. 3, 2005), where plaintiffs, parents of a non-classified student placed at Somerset Academy, filed a cross-petition with the New Jersey Office of Administrative Law "seeking to return T.W. to the school district as a regular education student." Id. at *1. The vehicle for plaintiffs' claim was the IDEA: the "parents' claim that the school district failed to comply with its obligations under the IDEA in placing T.W. at Somerset Academy and in failing to evaluate, classify and properly place T.W." Id. at 61-62.  T.W. is clearly inapposite to Plaintiffs' procedural due process claim, which does not relate to the legally appropriate placement of A.G., but rather relates to the minimum procedures by which a determination to remove A.G. from a public school can be made. Plaintiffs' Section 1983 procedural due process claim is unrelated to any allegations that Defendants failed to "evaluate, classify and properly place" A.G. according to their "obligations under the IDEA," and T.W. did not address the minimum procedural due process rights held by every public school student, independent of any IDEA procedures.

With respect to Plaintiffs' Section 504 "regarded as" claim, which also seeks to return a student to a regular education placement, the Court finds that T.W. does not control for a number of reasons. First, T.W. is not binding precedent, and second, T.W. did not address the

28

jurisdictional issue posed by the present motions, i.e., whether demanding a general education placement without any special education or related services or accommodations is relief that must first be sought through the IDEA administrative process. Third, and most importantly, T.W. is distinguishable on the facts. In T.W., the plaintiffs were not challenging a student's suspension or expulsion from a public school; the plaintiffs agreed to place the student at Somerset Academy as an alternative to suspension. Id. at *59. Then, the parents sought to have the student returned to a regular education setting. Further, the plaintiffs in T.W. did not initiate the proceedings before the ALJ, but brought their claim to return the student to a regular education setting in a cross-petition for due process, in response to the school board's initiation of a due process hearing to obtain consent to have the student evaluated under the IDEA because the parents had repeatedly refused to evaluate the student. In addition, although the parents refused to have the student classified in T.W., nothing indicates that the plaintiffs argued that the child should be returned to a regular education setting without any special educational or accommodations, as in the case at bar. This aspect of A.G.'s Section 504 "regarded as" claim takes that claim outside the ambit of the IDEA administrative process.

Thus, Defendants' motion to dismiss Plaintiffs' procedural due process and Section 504 claims for lack of subject matter jurisdiction is denied.

**c. The Board's Failure to Provide a Manifestation Determination**

Plaintiffs' second claim under Section 504 is that, as a student perceived by the Board to require special education and related services, A.G. was entitled to a determination of whether the behavior that lead to his suspensions was a manifestation of a disability. Although Plaintiffs cast this as a Section 504 claim, the right to a manifestation determination is granted by 20 U.S.C.A. § 1415(k)(1) of the IDEA:

(E) Manifestation determination
    (i) In general
    Except as provided in subparagraph (B), within 10 school days of any
    decision to change the placement of a child with a disability because of a
    violation of a code of student conduct, the local educational agency, the
    parent, and relevant members of the IEP Team (as determined by the
    parent and the local educational agency) shall review all relevant
    information in the student's file, including the child's IEP, any teacher
    observations, and any relevant information provided by the parents to
    determine--
        (I) if the conduct in question was caused by, or had a direct and
        substantial relationship to, the child's disability; or
        (II) if the conduct in question was the direct result of the local
        educational agency's failure to implement the IEP.
    (ii) Manifestation
    If the local educational agency, the parent, and relevant members of the
    IEP Team determine that either subclause (I) or (II) of clause (i) is
    applicable for the child, the conduct shall be determined to be a
    manifestation of the child's disability.

If it is determined that the conduct was a manifestation of a disability, Section 1415(k)(1)(F)

provides that "the IEP team shall . . . (i) conduct a functional behavioral assessment . . . [and]

(iii) except as provided in subparagraph (G), return the child to the placement from which the

child was removed." 20 U.S.C.A. § 1415(k)(1)(F).

      This relief presupposes that the student has, or will have, an Individual Education Plan

under the IDEA and has therefore consented to classification and the receipt of "special

education and related services" under the IDEA. Thus, any claim relating to Defendants' failure

to provide a manifestation determination is clearly seeking relief that is also available under the

IDEA, and therefore is subject to Section 1415(l)'s exhaustion requirement. Since Plaintiffs have

not exhausted their administrative remedies with respect to this Section 504 claim, the Court

lacks subject matter jurisdiction to consider it.

**C. Motion to Dismiss Plaintiffs' Section 504 "Regarded As" Claim**

      Defendants argue that Plaintiffs' "regarded as" claim fails as a matter of law because

Plaintiffs have refused to accept the accommodations offered to A.G. by the Board. Defendants have offered to classify A.G. and provide him with special education services pursuant to the IDEA in an out-of-district setting, as well as alternative placements at Somerset Academy and Berkeley Heights School District. Essentially, Defendants contend that Plaintiffs' refusal of special educational and related services under the IDEA and the alternative educational placements offered by Defendants insulate Defendants not only from liability under the IDEA, see 20 U.S.C.A. § 1414(a)(1)(D)(III)(aa), but also under Section 504.

Defendants argue for the above proposition in three ways. First, Defendants point out that the regulations implementing Section 504 in the educational context hold public schools to the same standard as the IDEA: a "recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction." 34 C.F.R. § 104.33(a). Second, Defendants point to the Third Circuit's statement that "there are few differences, if any, between the IDEA's affirmative duty and § 504's negative prohibition." Ridgewood Bd. of Educ., 172 F.3d at 253. Third, Defendants rely on Betts v. Rector and Visitor of the University of Va., 145 Fed. Appx. 7 (4th Cir. 2005), where the court affirmed "the judgment of the district court on the alternate ground that the University provided Betts with the reasonable accommodation required by . . . the Rehabilitation Act, regardless of the nature of his disability." Betts, 145 Fed. Appx. at 13.

Plaintiffs correctly point out that these arguments are beside the point in the context of Plaintiffs' Section 504 "regarded as" claim. Plaintiffs do not seek special education and related services or accommodations under Section 504. Rather, they assert A.G.'s right against discrimination on the basis of a perceived disability, i.e., being barred from attending any

31

Warren Township school because of such perception. That Defendants have offered A.G. special education and related services does not mean that A.G.'s right to be free from discrimination due to a perceived disability has not been violated. To the contrary, the offer of either classification under the IDEA or placement at Somerset Academy or Berkeley Heights is the allegedly discriminatory conduct that Plaintiffs attack in their Section 504 claim.

Defendants' offer to provide A.G with special education and related services, which his parents refused, does not prevent Plaintiffs from satisfying the elements of a Section 504 claim as a matter of law. Again, Section 504 requires a plaintiff to establish the following elements: "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Ridgewood Bd. of Educ., 172 F.3d at 253 (citation omitted). Defendants' suggested accommodations obviously do not relate to elements (1) and (3). Further, the mere fact that Defendants offered special education and related services to A.G. does not as a matter of law prevent Plaintiffs from establishing elements (2) and (4), that Defendants discriminated against A.G. by indefinitely suspending him because of a perceived disability, and that A.G. was "otherwise qualified" to enroll in an in-district school as a regular education student.

Betts, also a "regarded as" case under Section 504, is not to the contrary. Betts involved a student in a post-baccalaureate program who failed to meet the minimum G.P.A. requirements, and as a result, was dropped from the program and had his conditional offer of admission to medical school rescinded. Betts, 145 Fed. Appx. at 9. The student challenged the school's decision pursuant to Section 504, apparently arguing that it was motivated by his perceived disability. The court granted summary judgment on the ground that there was insufficient

32

evidence of such motivation. In the alternative, the court held that "we believe that the University provided reasonable accommodations to Betts that satisfied applicable statutory mandates, whatever the nature of Betts' disability and whether actual or perceived." Id. at 12.

The holding in Betts does not bar Plaintiffs' claim of discrimination in this case because Plaintiffs' claim differs in an important way from the discrimination at issue in Betts. The plaintiff in Betts clearly did not want access to general education services without accommodation; he failed to meet the regular standards. In contrast, Plaintiffs allege that they have been denied access to general education in the Township based on A.G's perceived disability; they want access to regular education services at an elementary school within Warren Township, not special education or accommodations. Thus, Defendants' offer of special services pursuant to the IDEA does not address the "regarded as" discrimination at issue in A.G.'s Section 504 claim, and Defendants' motion to dismiss that claim is denied.

## IV. Motion to Dismiss Plaintiffs' State Law Claims for Lack of Subject Matter Jurisdiction

Plaintiffs' remaining state claim is that "Defendant Warren Township Board of Education's actions violated Plaintiffs' rights under the New Jersey Constitution to a thorough and efficient education and to be free from discrimination based on perceived disability." Compl., ¶94. Defendants argue that all of Plaintiffs' claims are subject to administrative exhaustion requirements, Defendants Brief, 3-12, and therefore that the Court lacks subject matter jurisdiction to consider them. However, Plaintiffs' opposition papers only address whether their federal claims are subject to the exhaustion requirements of the IDEA. In their response to Defendants' argument regarding subject matter jurisdiction, Plaintiffs do not even mention their state law claims or address any exhaustion requirements that might apply to a claim under the "thorough and efficient education" clause of the New Jersey Constitution. Thus,

the Court will grant Plaintiffs thirty days to respond to Defendants' arguments regarding exhaustion and primary jurisdiction with respect to count seven of the Amended Complaint, and any other state law claims they might bring through amendment.

**V. Plaintiffs' Claims for Punitive Damages Under Section 1983 and Section 504**

Defendants argue that the Board, as a public entity, cannot be liable for punitive damages pursuant to Section 1983 or Section 504. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983"); A.W., 486 F.3d at 804 ("Punitive damages are not available [under Section 504]"). Plaintiffs do not contest the matter. Thus, as to the Board, Plaintiffs' claims for punitive damages pursuant to Section 1983 and Section 504 are dismissed.

**VI. Conclusion**

The Court dismisses without prejudice Plaintiffs' Section 1983 substantive due process, right to privacy, and equal protection claims and claims based on unspecified New Jersey laws and regulations. These foregoing claims are dismissed with the right to re-plead as described herein. The Court grants Defendants' motion to dismiss Plaintiffs' Section 504 claim based on Defendants' failure to provide a manifestation determination for lack of subject matter jurisdiction. The Court grants Defendants' motion to dismiss Plaintiffs' claims for punitive damages with respect to the Board. Defendants' motion to dismiss Plaintiffs' Section 1983 procedural due process and Section 504 "regarded as" claims for lack of subject matter jurisdiction is denied. Defendants' motion to dismiss Plaintiffs' Section 504 "regarded as" claim for failure to state a claim is denied. As to Defendants' motion to dismiss Plaintiffs' claim based on the "thorough and efficient education" clause of the New Jersey Constitution for lack of subject matter jurisdiction, the Court finds that the Plaintiffs' opposition briefing failed to

address the matter, and thus the Court grants Plaintiffs thirty days to address the Court's

jurisdiction over this state constitutional claim, or it will be dismissed.


Dated: March 4, 2008                                    /s/ Freda L. Wolfson
                                                        Honorable Freda L. Wolfson
                                                        United States District Judge

35