## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **M.G., et al.,** | : | **Civil Action No. 06-5099 (FLW)** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION ON MOTION FOR** |
| | : | **LEAVE TO FILE THE SECOND** |
| | : | **AMENDED COMPLAINT** |
| | : | |
| **CRISFIELD, et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

Presently before the Court is a motion for leave to file a second amended complaint by

M.G. and L.G., individually and on behalf of their minor son A.G. (collectively "Plaintiffs").

For the reasons, set forth below, the Court grants the motion in part and denies the motion in

part.

## I. Relevant Facts and Procedural History[1]

In September 2005, A.G. was a third grade student in Mt. Horeb School ("the School"),

in the Warren Township School District (the "District"), located in Somerset County.  [Docket

Entry No. 21-2 ¶14].  On September 27, 2005, the School's Child Study Team met with A.G.'s

parents and determined that A.G. was not a "child with a disability" and therefore was ineligible

for special education and related services under the Individuals with Disabilities Education Act

("IDEA").  Id. at ¶15.  Sometime thereafter, A.G. was suspended for ten days.  Id. at ¶16.

---

1 For the sole purposes of this motion, the Court accepts as true the facts alleged in Plaintiffs' proposed Second
Amended Complaint.  [Docket Entry No. 21-2].  See discussion in Section II, infra.

On January 13, 2006, Defendant Principal Joseph Palumbo ("Palumbo") informed Plaintiffs that A.G. could not return to the School until Plaintiffs met with him on January 20, 2006. Id. at ¶18. At the January 20th meeting, Palumbo and Defendant District Director of Personnel Services Laura Weitzman ("Weitzman") informed Plaintiffs that A.G. would not be allowed to return to the School. Id. at ¶20. Instead, they told Plaintiffs that in order for A.G. to be eligible to receive further educational services, they would have to agree to classifying A.G. under IDEA, and that he would then be entitled to receive special education. Id. at ¶21. Additionally, Palumbo and Weitzman stated that A.G. could not participate in school functions. Id. at ¶25.

On February 2, 2006, M.G. met with Defendant District Superintendent James Crisfield ("Crisfield"), who told Plaintiffs they must either consent to classifying A.G. under IDEA or A.G. would be sent to Somerset Academy without Plaintiffs' consent. Crisfield additionally stated that A.G. would be removed from the Warren Township School system if Plaintiffs refused to place him in Somerset Academy. Id. at ¶¶38, 42. Moreover, Crisfield threatened to report A.G. as truant if he remained out of school and told M.G. that "[y]ou really have no choice but to classify A.G." Id. at ¶¶43-44.

Plaintiffs allege that in response to M.G.'s request that A.G. be placed in one of the other District elementary schools, Crisfield falsely replied that allowing A.G. to attend another school in the District would violate school policy. Id. at ¶¶45-46. Plaintiffs further allege that the Board allowed other similarly situated parents to request that their children transfer to other schools within the district, and granted these requests. Id. at ¶¶47-48, 111-117.

Beginning on January 26, 2006, the Board provided A.G. with limited one-on-one at-home instruction. Id. at ¶¶49-50. In a letter dated February 14, 2006, Palumbo informed

Plaintiffs that this arrangement would be discontinued on March 3, 2006, and A.G. would be placed in Somerset Academy on March 6, 2006. Id. at ¶55. Plaintiffs allege that in this letter, Palumbo falsely stated that Somerset Academy was "an alternative educational placement intended to address discipline problems." Plaintiffs contend that Somerset Academy was in fact a special education school, not an alternative placement. Id. at ¶56.

On May 15, 2006, M.G. notified Crisfield that Plaintiffs had placed A.G. in a private school and would seek reimbursement from Defendants for A.G.'s tuition and transportation expenses. At the same time, Plaintiffs asked that home instruction continue; those home instruction services were discontinued as of May 23, 2006. Id. at ¶¶ 69-72.

On June 13, 2006, M.G. contacted Defendant Board of Education President Pamela Coley ("Coley"), explained what had occurred, and requested copies of the Board's minutes and other documents, which detailed the Board's authorization of the actions taken against A.G. Plaintiffs allege that no copies of the minutes were provided and that the Board's counsel stated that the Board never took any action regarding A.G. Id. at ¶¶ 73-75.

Plaintiffs requested that the Board hold hearings and discipline Crisfield, Weitzman and Palumbo for their actions. Although they were told that an investigation was being conducted, and despite repeated requests, Plaintiffs never received any information regarding the Board's investigation. Plaintiffs allege that Coley and the Board ratified the actions of Crisfield, Weitzman and Palumbo by failing to properly investigate their actions or discipline them. Id. at ¶¶ 76-80.

On August 30, 2007, A.G. found a letter from Superintendent Crisfield taped to Plaintiffs' garage door, stating that Plaintiffs would not need to classify A.G. under IDEA, but that A.G. would have to attend a program in the Berkeley Heights School District. The letter

further advised that Plaintiffs would have to consent to the conditions set by this school,
including an individualized behavioral plan. Id. at ¶ ¶ 85-86.  Plaintiffs allege that M.G. visited
the school, and found it to be the same special educational program previously proposed by
Defendants.  At the time of the visit, Weitzman informed M.G. that she intended to keep A.G.
out of the Warren Township School District until at least middle school. Id. at ¶ ¶ 87-88.

On October 24, 2006, Plaintiffs filed a Complaint, alleging violations of Plaintiffs'
federal and state constitutional rights, various state statutes and regulations, and Section 504 of
the Rehabilitation Act, 29 U.S.C.A. 794.  [Docket Entry No. 1].  On June 25, 2007, Plaintiffs
filed the First Amended Complaint, which Defendants moved to dismiss pursuant to Fed. R. Civ.
P. 12(b)(1) and (6).  [Docket Entry No. 12, 15].

By Order and Opinion entered on March 5, 2008, the Court dismissed without prejudice
Plaintiffs' substantive due process, right to privacy and equal protection claims based on Section
1983, as well as claims based on unspecified New Jersey laws and regulations, but permitted
Plaintiffs to re-plead these claims.  [Docket Entry Nos. 19, 20].  The Court dismissed Plaintiffs'
Section 504 claim, based on Defendants' alleged failure to provide a manifestation
determination, for lack of subject matter jurisdiction, as well as Plaintiffs' claim for punitive
damages against the Board.  The Court denied Defendants' motion to dismiss Plaintiffs' Section
1983 procedural due process and Section 504 "regarded as" claims for lack of subjection matter
jurisdiction, as well as Defendants' motion to dismiss Plaintiffs' Section 504 "regarded as" claim
for failure to state a claim.  Finally, the Court granted Plaintiffs thirty days to respond to
Defendants' argument that the Court lacks subject matter jurisdiction over the state law claims

asserted in the First Amended Complaint.  March 5, 2008 Order (hereinafter, the "March 5 Order") [Docket Entry No. 20].

On April 3, 2008, Plaintiffs filed a motion seeking leave to file a Second Amended Complaint.  [Docket Entry No. 21].  The motion to amend was removed from the docket while efforts were underway to resolve the dispute.  When those efforts were unsuccessful, the Court restored the motion to the docket.  The motion has been fully briefed.  On August 25, 2009, the Court heard oral argument on the state law issues, and requested supplemental submissions in response to certain questions raised at the argument.  This Court now rules on the motion for leave to amend.  By separate Report and Recommendation also issued on this date, this Court addresses the issues as to which the parties were directed to submit additional briefing pursuant to the March 5 Order.

## II.  Standard of Review

A party may amend a pleading "once as a matter of course at any time before a responsive pleading is served."  Fed. R. Civ. P. 15(a).  "After amending once or after an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party, but leave shall be freely given when justice so requires."  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (internal citation and quotations omitted).  "An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment."  WHY ASAP, LLC v. Compact Power, 461 F. Supp. 2d 308, 311 (D.N.J. 2006) (quoting Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)) (internal citation omitted).

An amendment that fails to state a claim upon which relief can be granted is futile. <u>See</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997); <u>Glassman v.</u> <u>Computervision Corp.</u>, 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 <u>Moore's Federal Practice</u>, ¶ 15.08[4], at 15-80 (2d ed.1993)).  The standards for denying leave to amend based on futility and granting a motion to dismiss under <u>Fed. R. Civ. P.</u> 12(b)(6) are identical.  <u>See</u> <u>In re Burlington</u> <u>Coat Factory Sec. Litig.</u>, <u>supra</u>, 114 F.3d at 1434; <u>Massarsky v. General Motors Corp.</u>, 706 F.2d 111, 125 (3d Cir. 1983) ("The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss."); 3 <u>Moore's</u>, <u>supra</u>, ¶ 15.08[4], at 15-81.

"The Court must accept as true all factual allegations contained in the proposed amended complaint and any reasonable inferences that can be drawn from them." <u>Curbison v. Lee</u>, No. 05-5280, 2007 WL 2226016 at *3 (D.N.J. July 31, 2007) (citing <u>Brown v. Phillip Morris, Inc.</u>, 250 F.3d 789, 796 (3d Cir. 2001)) (citation omitted).  Nonetheless, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." <u>Pathfinder Management, Inc. v. Maybe Pharma PTY</u>, No. 06-2204, 2008 WL 3192563 at *4 (D.N.J. Aug. 5, 2008) (quoting <u>Baraka v. McGreevey</u>, 481 F.3d 187, 211 (3d Cir. 2007)).  Consequently, the pleading stage "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Phillips v.</u> <u>County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Bell Atlantic Corp. v.</u> <u>Twombly</u>, 550 U.S. 544, 556 (2007)).

Plaintiffs seek leave to file the Second Amended Complaint, setting forth further support for their equal protection, right of privacy and state law claims.[2] Each proposed amendment will be considered separately.

### III. Plaintiffs' Equal Protection Claim

Plaintiffs seek leave to amend their equal protection claim (Count Three of the Second Amended Complaint), in order to meet the standard articulated by the Court in the March 5, 2008 Opinion (the "March 5 Opinion"). [Docket Entry No. 19]. Defendants oppose the amendment, arguing that Plaintiffs have failed in their "burden to 'negative any reasonably conceivable state of facts that could provide a rational basis for the classification.'" [Docket Entry No. 26 at p. 3]. (citations omitted)

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (internal quotations and citations omitted). Thus, "the Supreme Court has held that the Equal Protection Clause is 'essentially a direction that all persons similarly situated should be treated alike.'" Buell v. Hughes, 596 F. Supp. 2d 380, 386 (D.Conn. 2009) (quoting City of Cleburne, Tex. v. Cleburne Living Ctr. Inc., 473 U.S. 432, 439 (1985)).

---

2 Plaintiffs sought leave to add Mildred Spiller as a new Defendant. Ms. Spiller is identified as the current president of the Warren Township Board of Education. Defendants opposed adding Mrs. Spiller individually. [Docket Entry No. 26]. In reply, Plaintiffs withdrew that portion of the Second Amended Complaint which seeks to add Ms. Spiller. [Docket Entry No. 29]. Accordingly, the portion of the motion that seeks to add Ms. Spiller is moot and is not addressed further.

Plaintiffs may successfully assert an equal protection claim, arguing that they have been

treated differently from others, under a number of different classifications:

> The courts apply different levels of scrutiny to [these] different types of classifications.  At a minimum, a statutory classification must be rationally related to legitimate government purpose . . . . Classifications based on race or national origin . . . and classifications affecting fundamental rights . . . are given the most exacting scrutiny.  Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy.

Buell, supra, 596 F. Supp. 2d at 386 (quoting Clark v. Jeter, 486 U.S. 456, 461 (1988)) (internal

citations omitted).

Although analysis under the Equal Protection Clause typically focuses on government

classifications of groups that are treated differently than others, even an individual may merit

such protection if he or she is being signaled out unreasonably.  See, e.g., Engquist v. Oregon

Dept. of Agriculture, 128 S.Ct. 2146, 2152-53 (2008).  Thus courts created the so called "class of

one":

> When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances or conditions."  Thus when it appears that an individual is being singled out by the government, the specter of arbitrary classifications is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment."

Id. at 2153 (quoting Olech, supra, 528 U.S. at 564).

Here, Plaintiffs do not allege that they are members of a suspect class.  Furthermore, it is

clear that education is not a fundamental right.  See Bowers v. National Collegiate Athletic

8

Ass'n, 475 F.3d 524, 553 (3d Cir. 2007); San Antonio Indep. School Dist. v. Rodriguez, 411

U.S. 1, 35 (1973).  Accordingly, Plaintiffs' equal protection claim appears to be that Plaintiffs

are essentially a "class of one."[3]

  To state an equal protection claim under a "class of one" theory, "a plaintiff must allege

that (1) the defendant treated him differently from others similarly situated, (2) the defendant did

so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v.

Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) (finding that the claim failed because

there was no allegation of similarly situated individuals) (citing Olech, supra, 528 U.S. at 564);

Mosca v. Cole, 217 Fed. Appx. 158, 164, No. 05-4350, 2007 WL 470505 at *5 (3d Cir. Feb. 14,

2007); Phillips, supra, 515 F.3d at 243; Cherry Hill Towers, L.L.C. v. Township of Cherry Hill,

407 F. Supp. 2d 648, 657-58 (D.N.J. 2006); Mayer v. Gottheiner, 382 F. Supp. 2d 635, 650-51,

655 (D.N.J. 2005); Carlino v. Gloucester City High School, 57 F. Supp. 2d 1, 18 (D.N.J. 1999)

(applying rational basis test to alleged selective enforcement of school policy).

  The Third Circuit has held that a plaintiff is not required to specifically identify the

similarly situated persons.  Phillips, supra, 515 F.3d at 243-44 (citing DeMuria v. Hawkes, 328

F.3d 704, 707 (2d Cir. 2003) (finding that the plaintiff met the pleading standard for a "class of

one" equal protection claim even though the plaintiff did not specifically identify other similarly

situated persons)).  Nor does a plaintiff need to allege that the defendant's differential treatment

of the plaintiff derived from an improper subjective motive.  Phillips, supra, 515 F.3d at 243-44

(citing Olech, supra, 528 U.S. at 565) ("These allegations, quite apart from the [defendant's]

---

3  A class of one can include more than one person.  See Olech, supra, 528 U.S. at 564 n.1 ("Whether the
complaint alleges a class of one or five is no consequence because we conclude that the number of individuals in a
class is immaterial for equal protection analysis.").

subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis.")).

Plaintiffs allege in Count Three that they wanted A.G. to transfer to another school within the District but Crisfield told M.G. that it was against school policy to allow A.G. to do so. Nevertheless, Plaintiffs claim that the District allowed other similarly situated children to transfer to another school within the District by allowing the parents to make an application directly to the Board. Plaintiffs allege that they were not afforded the same opportunity, and that Defendants' actions were "arbitrary, capricious and unreasonable." [Docket Entry No. 21-2 ¶ ¶ 47-48, 111-117].

Defendants argue that "plaintiffs have . . . failed to set forth any factual allegations challenging the rational basis of the Board's actions, i.e. A.G.'s inappropriate behaviors." [Docket Entry No. 26 at p. 4]. The proposed Second Amended Complaint alleges, however, that Defendants intentionally treated Plaintiffs differently than others who were similarly situated and that Defendants' actions were not rationally related to a legitimate interest. At this early stage of pleading, Plaintiffs need do no more. In discovery, the parties can explore whether Defendants' actions were rationally related to a legitimate governmental interest.

Accordingly, Plaintiffs have satisfied their burden at the pleadings stage to plead an equal protection claim against Defendants, and the Court will allow this amendment to go forward.

## IV. The Right to Privacy Claim

Plaintiffs also seek leave to amend their right to privacy claim (Count Two of the Second Amended Complaint), to provide further support in accordance with the standard articulated in

the March 5 Opinion. Defendants have opposed the amendment, again arguing that the proposed amendment would be futile.

The Due Process Clause of the Fourteenth Amendment provides that "no state . . . shall deprive any person of life, liberty or property without due process of law." U.S. CONST. amend. XIV, § 1. The United States Supreme Court has held that "the 'right to privacy' is founded in the Fourteenth Amendment's concept of personal liberty[,]" articulated in the Due Process Clause. Whalen v. Roe, 429 U.S. 589, 600 n.23 (1977) (citing Roe v. Wade, 410 U.S. 113, 152 (1973)). The right to privacy has been found to protect two different types of interests. "One is the individual interest in avoiding disclosure of personal matters, and another is interest in making certain kinds of important decisions." Whalen, supra, 429 U.S. at 599-600; C.N. v. Ridgewood Board of Ed., 430 F.3d 159, 178 (3d Cir. 2005); Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000). It is the latter interest that forms the basis for Plaintiffs' asserted claim.

Foremost among the "important decisions" protected by the Fourteenth Amendment right of privacy is the right of parents regarding the education of their children. "[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." C.N. v. Ridgewood Board of Ed., supra, 430 F.3d at 182 (quoting Troxel v. Granville, 530 U.S. 57, 66 (2000)). The right is not absolute, however, and may have to give way when faced with a legitimate governmental interest. C.N. v. Ridgewood Board of Ed., supra, 430 F.3d at 182-83 (citing cases involving protection of curriculum, school environment, and safety of children).

Courts considering alleged violations of the right to privacy employ a rational basis review. In other words, the inquiry is whether the state action complained of has a "reasonable relationship" to a legitimate state interest. Meyer v. Nebraska, 262 U.S. 390, 403 (1923)

11

(reversing conviction of teacher who violated state law forbidding the instruction of non-English languages to children, finding that the statute was "without reasonable relation to any end within the competency of the state"); <u>Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary</u>, 268 U.S. 510, 534-35 (1925) (affirming order refusing to enforce state law requiring children to attend public school because it "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children"); <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 233-34 (1971) (recognizing rational basis review as the appropriate standard for parents' right to privacy claim, absent additional free exercise claim); <u>Combs v. Homer-Center School District</u>, 540 F.3d 231, 249 (3d Cir. 2008) ("[T]here is no recognized right for parents to educate their children unfettered by reasonable government regulation.") (internal quotations omitted); <u>Littlefield v. Forney Ind. School Dist.</u>, 108 F. Supp. 2d 681, 702 (N.D.Tex. 2000) ("It is clear, therefore, that rational basis scrutiny applies in parental rights cases where the interests of the state in promoting education are also present.").

Defendants argue that leave to amend the right to privacy claim should be denied on two separate grounds. [Docket Entry No. 26]. First, they contend that Plaintiffs have failed to identify which of their rights of privacy under the Fourteenth Amendment was violated. The Court is not persuaded by this argument. In Count Two of the proposed Second Amended Complaint, Plaintiffs allege that "M.G. and L.G.'s right of privacy under the 14th Amendment extends to the right to make choices regarding their son's education, including whether to consent to his classification and receipt of special education." [Docket Entry No. 21-2 ¶106]. This sufficiently puts Defendants on notice with regard to the specific right of privacy alleged.

Second, Defendants claim that Plaintiffs have failed to allege facts which demonstrate that Defendants' actions were without a rational basis. [Docket Entry No. 26 at p. 3]. A similar

12

concern was raised in the March 5 Opinion, in which the Court noted that "Plaintiffs do not explicitly allege that Defendants lacked any legitimate reason, i.e., the rational basis required to withstand a substantive due process challenge,[4] for indefinitely suspending A.G. . . ." [Docket Entry No. 19, at p. 13]. In the Second Amended Complaint, however, Plaintiffs have added both factual and legal allegations to support the right to privacy claim. For instance, Plaintiffs state that Defendants refused to provide A.G. with general education services. [Docket Entry No. 21-2 ¶107]. Plaintiffs add more substance to their claims that Defendants demanded that M.G. and L.G. consent to classifying A.G. under IDEA and/or sending him to special education programs. Id. at ¶ ¶ 21, 22, 42, 86, 87. Plaintiffs also contend that Defendants' efforts to send A.G. to an "alternative education program" were without legitimate basis in that A.G. had not assaulted anyone with a weapon, nor had he been adjudicated as a delinquent or convicted of a crime. Id. at ¶59-61. As a result, Plaintiffs contend that Defendants' actions were "arbitrary, capricious, and unreasonable," and that "Defendants lacked a legal basis, acted arbitrarily and violated Plaintiffs' right of privacy by refusing to provide A.G. with any educational services other than in special education programs." Id. at ¶ ¶ 104, 107-09.

Because the standard governing this motion for leave to amend is essentially the same as the one applicable to a motion to dismiss, see In re Burlington Coat Factory Sec. Litig., supra, 114 F.3d at 1434; Massarsky, supra, 706 F.2d at 125 (3d Cir. 1983) ("The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss."); 3 Moore's, supra, ¶ 15.08[4], at 15-81, the Court must regard the factual allegations in the proposed Second Amended Complaint as true. While Defendants may ultimately present facts

---

4    For purposes of the March 5 Opinion, the Court considered the right of privacy claim within its substantive due process analysis.

to dispute the allegations of the Second Amended Complaint, the Court is constrained to consider the factual underpinnings of the motion for leave to amend based upon the allegations set forth in the pleading itself. Professional Cleaning and Innovative Bldg. Services, Inc., supra, 245 Fed. Appx. at 167, 2007 WL 2249064 at *5.

Accordingly, this Court finds that Plaintiffs have satisfied their burden at the pleadings stage to allege a right to privacy claim against Defendants, and the Court will allow this amendment to go forward.

### V. Claims under Various State Statutes and Regulations

In the March 5 Order, the Court dismissed Plaintiffs' "claims based on unspecified New Jersey laws and regulations . . . without prejudice; and granted Plaintiffs thirty days to re-plead such claims." Plaintiffs have moved for leave to file the proposed Second Amended Complaint, to identify the state laws and regulations pursuant to which Plaintiffs seek relief. Proposed Count Six adds references to a myriad of state statutes and regulations, asserting violations of the New Jersey Law Against Discrimination, N.J.S.A. 10-5.1, et seq. (the "LAD") and various state education statutes and regulations (collectively, the "Education Laws"). [Docket Entry No. 21-2, Count Six].

The LAD "enforces the guarantee of civil rights, and applies universally to 'places of public accommodation,'" a defined term which expressly includes schools. N.J.S.A. 10:5-5(l); L.W. ex rel. L.G. v. Toms River Regional Schools Bd. of Education, 189 N.J. 381, 406-07 (2007). The LAD may apply to claims of failure to accommodate a student's special needs, even if that student is not learning impaired or in need of special education. Ellison v Creative Learning Center, 383 N.J. Super. 581, 593-95 (App. Div. 2006) (finding that the LAD applied to

claim against private pre-school for allegedly failing to accommodate child who utilized an insulin pump).

In Count Six of the proposed Second Amended Complaint, the allegations relating to the LAD claims assert, in relevant part, that "Defendants denied A.G. the 'advantages, facilities and privileges' of schools in Warren Township School District based on his perceived disability. N.J.S.A. 10:5-4." [Docket Entry No. 21-2 ¶133]. The individual Defendants are charged as "aiders and abetters in discriminating against A.G." Id. The proposed Second Amended Complaint further alleges that although Plaintiffs argue that A.G. is not handicapped, the LAD "encompasses discrimination based on a perceived disability. N.J.A.C. 13:13-1.3(I)." Id. at ¶132. At oral argument, counsel for Defendants recognized that the allegations relating to the LAD claim are essentially subsumed in the Section 504 claims, which the Court declined to dismiss in the March 5 Order. This Court therefore finds that the allegations in the proposed amendment to Count Six, insofar as that Count seeks to assert a claim under the LAD, are sufficient at this early pleading stage and should be allowed to go forward.

Plaintiffs also seek to amend Count Six to identify numerous state education statutes and regulations. At the outset, the Court notes that this amendment arises in a somewhat unique procedural posture. In the March 5 Order, the Court dismissed these claims without prejudice, granted leave to re-plead them as set forth in the Order, and also granted Plaintiffs 30 days to respond to Defendants' argument that these claims should be dismissed for lack of subject matter jurisdiction. Accordingly, these state law claims are before the Court in both postures, on the motion for leave to amend and on the motion to dismiss. The issues raised in the motion to dismiss are addressed separately in the Report and Recommendation also filed on this date. This

15

Opinion is limited to whether Plaintiffs should be allowed to amend what is now Count Six, in order to identify specific state education law statutes and regulations, which they claim were violated in Defendants' treatment of A.G.

Defendants do not specifically address whether this amendment should be allowed to go forward. Rather, they confine their response on the motion to amend to the issues of equal protection and right to privacy. [Docket Entry No. 26]. With regard to the Education Law claims Plaintiffs seek to add by way of the proposed amendment, Defendants simply indicate that they will address those state laws in their separate reply on their motion to dismiss. [Docket Entry No. 26 at p. 4]. Nowhere do they state the basis for any opposition to the amendment itself. It is from oral argument and the parties' supplemental submissions filed after argument, however, that the Court was able to glean the basis for Defendants' objection. Although it was presented in the context of the motion to dismiss for lack of subject matter jurisdiction, this Court finds the issues raised to be highly relevant to whether the amendment itself states a claim and should be allowed to proceed.

Specifically, at oral argument and in their supplemental submissions, counsel were asked to address (1) whether Plaintiffs continue to seek injunctive relief under Counts Five and Six, as set forth in the Second Amended Complaint, and if so, the precise nature of the injunctive relief sought; and (2) whether the Commissioner has authority to award monetary damages under the claims asserted in Counts Five and Six. In response to the Court's inquiry as to whether Plaintiffs are still asking for injunctive relief, counsel for Plaintiffs advised the Court that Plaintiffs no longer seek to have A.G. returned to the Warren Township public school system. They did not identify any other injunctive relief sought. [Docket Entry No. 43]. Accordingly,

16

the proposed amendment to assert a claim under the Education Laws will be considered as a claim for monetary damages alone.

At oral argument and in their supplemental submission, Defendants contend that there is no private right of action for monetary damages under the Education Laws referenced in the proposed Amended Complaint.  [Docket Entry No. 44].[5]  If in fact there is no right to money damages, and in light of the fact that Plaintiffs no longer seek injunctive relief, the proposed amendment to assert claims under the Education Laws would be futile and would not survive a motion to dismiss.  Accordingly, the issue is whether the proposed amendment meets the standard set forth, supra, with regard to the motion to amend.  For the following reasons, this Court finds that Plaintiffs have not established, either in the proposed Second Amended Complaint or in their briefing of the issues, that the proposed amendment states a claim for which relief can be granted.

At oral argument, the Court asked Plaintiffs to submit supplemental briefing on the issue of whether the Commissioner has authority to grant monetary relief under the state laws and regulations relied upon in the proposed Second Amended Complaint.  In response, Plaintiffs filed a supplemental submission, in which they indicated that

> [a]s for the remaining violations set out in Count 5 and the Thorough and Efficient Education claim in Count Two, my research revealed no case law prohibiting monetary damages for these claims.  At the same time, I found no case law where that issue was addressed.  The reason for the lack of case law on this issue may be because a claim for violation of state statute or regulations is often made simultaneously with a claim for a violation of constitutional due process.

_____

5    In the supplemental submission, Defendants also contend that Count Five, asserting claims under the Thorough & Efficient Clause of the New Jersey Constitution, should be dismissed for failure to state a claim.  This issue was not raised in the motion to dismiss and is not before the Court on either of the pending motions – Plaintiffs do not seek leave to amend Count Five, nor did Defendants move to dismiss this Count for failure to state a claim.

[Docket Entry No. 43]. Thus, Plaintiffs admit that they are unable to offer any support for their contention that monetary relief is available to them under the Education Laws, independent of some other cause of action.

In their supplemental submissions, Defendants make two arguments. Initially, they argue that to the extent the cause of action asserted by Plaintiffs sounds in tort or in breach of contract, it is essentially a claim for "educational malpractice," which has been rejected by the courts of New Jersey, as well as other states. [Docket Entry No. 44, p. 3]. Defendants rely on Myers v. Medford Lakes Board of Education, 199 N.J. Super. 511 (App. Div. 1985), Stein-O'Brien v. Pennington School, No. 06-2101, 2008 WL 160588 (E.D. Pa. Jan. 15, 2008) and Swidryk v. Saint Michael's Med. Ctr., 201 N.J. Super. 601 (Law. Div. 1985) in support of their contention that educational malpractice is not a viable cause of action in New Jersey. In Stein-O'Brien, the Eastern District of Pennsylvania was called upon to review the issue under New Jersey law. The court first noted that "[w]hen considering breach of contract claims based on inadequate or ineffective educational services (rather than claims based on breach of an express contractual provision), New Jersey courts have noted that such claims are comparable to a tort claim for educational malpractice." Id. at *6. The court then held that "to the extent Plaintiffs premise their breach of contract claim on a general theory that Defendant failed to provide adequate or effective educational services to [Plaintiff], the claim must be dismissed." Stein-O'Brien, supra, 2008 WL 160588 at *6. Plaintiffs deny that they are asserting a claim of educational malpractice or that the relief sought sounds in tort under the Tort Claims Act. To the extent the claims asserted in Count Six do, however, assert a claim akin to educational malpractice, leave to amend must be denied because the cause of action has not been recognized in New Jersey.

18

Defendants also argue that in the context of general education, as opposed to special education, there is no provision for monetary damages, and the only relief a private party can seek is injunctive. Here, Plaintiffs have agreed that they no longer seek injunctive relief. Thus, Defendants contend that because there is no private right of action to monetary relief under the Education Laws, those claims should be dismissed.

Absent an indication that the legislature intended to create the right among private individuals to sue for monetary relief under the Education Laws, this Court cannot assume that such a right exists. See Harvey v. Township of Deptford, 402 N.J. Super. 156, 165 (App. Div. 2008) (rejecting "claim for monetary damages against a municipality for the failure to execute its statutory obligations . . . absent a constitutional or statutory basis."). As noted above, Plaintiffs have admitted that they can find no such basis for the claim for monetary relief here.

This Court notes that in some instances, the regulatory scheme expressly contemplates a right to monetary relief in the education laws, but that such relief is limited to the specific section at issue. See, e.g., N.J.A.C. 6A:14-2.10 (providing for reimbursement for tuition of students with disabilities); N.J.A.C. 6A:3-1.17 (authorizing Commissioner to award pre-judgment interest); see also N.J.S.A. 18A:6-30 (authorizing compensation to any person holding office, position or employment in the New Jersey public school system who was illegally suspended or dismissed). The parties have conceded that there are no statutory or regulatory provisions entitling a private party to monetary relief under the general education laws relied on by Plaintiffs.

The case law is not to the contrary. This Court was unable to find any cases which provided reimbursement relief to parents of general education students. The parties have certainly not cited to any. Those cases that deal with reimbursement for tuition expenses arise in

19

the context of the failure to meet the needs of special education students.  The Court finds no

such instance where the child has not been classified and where, as here, the party seeking the

relief affirmatively contends that the child is not eligible for special education.  In Lascari v.

Board of Educ. of the Ramapo Indian Hills Regional High School District, 116 N.J. 30 (1989),

for example, the New Jersey Supreme Court held that the parents of a handicapped child who

was not receiving a "free, appropriate education" from the district were entitled to tuition

reimbursement after sending their son to an appropriate private school.  There, the child had

been classified and the issue was the appropriateness of the Individualized Education Plan

created for the child.  Id.; see also A.N. v. Clark Bd. of Educ., OAL Dkt. No. EDS 10941-82

(March 23, 1983) (awarding reimbursement of handicapped student's residential expenses after

finding that such placement was necessary); M.B. v. Board of Educ. of the Pascack Valley

Regional School Dist., 1981 S.L.D. 752 (Commissioner of Education Decision, June 22, 1981)

(awarding tuition reimbursement where school failed to evaluate classified student for an

extended period of time, failed to re-evaluate child and failed to comply with Individualized

Education Plan requirements); E.E. v. Metuchen Bd. of Educ., 1980 S.L.D. 1269 (Commissioner

of Education Decision, Nov. 3, 1980) (awarding tuition reimbursement because the school failed

to classify student despite parent's request); Board of Educ. of the Village of Ridgewood v.

Hecht, 1980 S.L.D. 1260 (Sept. 9, 1980) (awarding tuition reimbursement where school failed to

evaluate classified student).  Most significantly, as noted above, Plaintiffs themselves have not

cited any statute, regulation or case law that supports a right to monetary relief under these

circumstances.

As stated supra, Plaintiffs must show that the proposed amendment states a claim and

would not be futile under the same standard as a motion to dismiss.  This Court finds that they

20

have not met that burden and the motion for leave to file the proposed amendment with regard to the Education Laws in Count Six will be denied.

## VI. Conclusion

Plaintiffs have made a motion to amend the Complaint, seeking to supplement the bases for their equal protection, right to privacy, and state law claims. The Court finds that Plaintiffs have alleged sufficient facts and allegations at the pleading stage with regard to the equal protection, right to privacy and LAD claims. Accordingly, the Court grants Plaintiffs' motion for leave to file the Second Amended Complaint with regard to Counts Two and Three. The Court also grants the motion with regard to Count Six only insofar as it seeks to assert a claim under the New Jersey Law Against Discrimination. The Court denies the motion to amend Count Six of the proposed Second Amended Complaint insofar as it seeks to assert claims under the Education Laws.

An appropriate Order will be entered on this date.

Dated: September 11, 2009

/s/ Lois H. Goodman
**LOIS H. GOODMAN**
**United States Magistrate Judge**